NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-131

JACKIE DOUCET, ET AL.

VERSUS

DARWIN SELECT INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 75338-B
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

AFFIRMED.

Cooks, J., concurs.
Amy, J., concurs in the result and assigns reasons.

**John F. Wilkes, III**
**Borne & Wilkes,L.L.C.**
**P. O. Box 4305**
**Lafayette, LA 70502-4305**
**(337) 232-1604**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
   **Eddie Soileau, Evangeline Parish Sheriff**
   **Evangeline Parish Sheriff's Department**

**Judy Y. Barrasso**
**Michael A. Balascio**
**Joshua O. Cox**
**Barrasso, Usdin, Kupperman, Freeman & Sarver, L.L.C.**
**909 Poydras Street, Suite 2400**
**New Orleans, LA 70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Allied World Insurance Company**

**C. Brent Coreil**
**Attorney at Law**
**P. O. Drawer 450**
**Ville Platte, LA 70586**
**(337) 363-5596**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
   **Jackie Doucet**
   **Kay Doucet**

**SAUNDERS, J.**

This insurance coverage dispute arose from an accident wherein a deputy sheriff was injured while supervising trustee inmates at an automobile repair shop owned and operated by the Sheriff's Department. The extent of liability coverage and ambiguity in the policy exclusions and definitions are at issue. The trial court granted summary judgment denying coverage for one of the two available policies, but found that the second policy provided coverage for Plaintiffs' injuries. Defendant/Appellant appeals this judgment. Since the insurance policy can reasonably be interpreted as the trial court did, we affirm the decision of the trial court.

FACTS AND PROCEDURAL HISTORY

The undisputed facts are as follows: Plaintiff, Jackie Doucet (hereinafter "Plaintiff"), sustained injuries while supervising trustee inmates as a deputy sheriff employed by the Evangeline Parish Sheriff's Department (hereinafter "Sheriff's Department") and the Evangeline Parish Sheriff, Eddie Solieau (hereinafter "Sheriff"). On May 27, 2011, while overseeing the trustee inmates at the automobile repair shop operated by the Sheriff's Department, Plaintiff attempted to sit in a chair at the shop; however, the chair collapsed causing him to fall onto the floor. Plaintiff sustained injuries to his right arm and shoulder from the fall.

For the next three years, Plaintiff continued to receive medical treatment and several surgical procedures for his injuries. Despite his being unable to work, the Sheriff's Department continued to pay Plaintiff his full salary and employment benefits along with payment for all of his medical expenses and/or medical insurance premiums.

On September 14, 2014, Plaintiff was advised by the Sheriff's Department that all compensation and benefits would be terminated as of September 15, 2014. Plaintiff filed suit upon this notice of termination, and his wife, Kay Doucet (hereinafter "Plaintiff"), joined in the suit with her claim for loss of consortium. The Sheriff's Department and Sheriff were made defendants in the suit as Plaintiff's employer and as the party which operated, maintained, and controlled the premises where Plaintiff's injury occurred. Allied World, who provided insurance coverage for the Sheriff's department at the time of the suit, was also made a defendant.

Allied World filed peremptory exceptions of prescription and no cause of action, and, in the alternative, a motion for summary judgment claiming that not only had Plaintiffs' claims prescribed, but also no coverage existed under either of the two insurance policies provided by Allied World to the Sheriff's Department.

At a hearing on October 8, 2015, the trial court found the first of the two policies, the "Public Officials Liability Policy," to be inapplicable to Plaintiffs' claims, and, accordingly, it was dismissed from the action by the granting of the summary judgment motion in favor of Allied World. The trial court denied Allied World's exceptions and motion for summary judgment as to the second insurance policy, the "Police Professional Liability Policy," (hereinafter "the Policy"), holding that coverage existed under this policy for the claims asserted by Plaintiffs.

The Policy provides coverage to the Sheriff's Department for claims made during the policy period of December 11, 2014, through December 11, 2015.

The trial court entered judgment on December 10, 2015, and denied Defendant's exceptions and motion for summary judgment due to findings of

2

ambiguity in the Policy. Allied World Insurance Company appeals this denial of exceptions and motion for summary judgment with respect to the Policy.

## ASSIGNMENTS OF ERROR

On appeal, Allied World asserts that the trial court erred in finding that coverage exists under its Police Liability Policy for Plaintiffs' claims and erred in the trial court's denial of its motion for summary judgment as to the coverage under this Policy.

## STANDARD OF REVIEW

Summary judgments are subject to *de novo* review on appeal and the reviewing court must ask the same questions as a trial court: "whether there is a genuine issue of material fact . . . and whether the party is entitled to judgment as a matter of law." *Pendleton v. Barrett,* 97-570, p. 7 (La.App. 3 Cir. 12/23/97); 706 So.2d 498, 502.

Summary judgment "is designed to secure the just, speedy, and inexpensive determination of every action [.]" La.Code Civ.P. art. 966(A)(2). "In a case where there are no contested issues of fact[ ] and the only issue is the application of the law to the undisputed facts, . . . the proper standard of review is whether or not there has been legal error." *Tyson v. King,* 09-963, p. 2 (La.App. 3 Cir. 2/3/10), 29 So.3d 719, 720 (quoting *Bailey v. City of Lafayette,* 05-29, p. 2 (La.App. 3 Cir. 6/1/05), 904 So.2d 922, 923, *writs denied,* 05-1689, 05-1690, 05-1691, and 05-1692 (La.1/9/06), 918 So.2d 1054, 1055). Because the parties set forth no disputed facts in the instant case, the standard of review is whether the trial court's denial of

3

Allied World's motion for summary judgment constituted legal error. *Daigle v. Merrill Lynch*, 12-1016 (La.App. 3 Cir. 2/6/13), 107 So.3d 901.

An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Innovative Hosp. Sys., LLC v. Abraham*, 2010-217 (La. App. 3 Cir. 4/6/11), 61 So. 3d 740, 743, *writ denied*, 2011-0845 (La. 6/17/11), 63 So. 3d 1036.

Where the meaning of a contract is to be determined solely from the words upon its face, the appellate courts are as competent as the trial court, and no special deference is usually accorded the trial court's findings. *Schroeder v. Board of Supervisors of Louisiana State Univ.,* 591 So.2d 342, 345 (La.1991).

DISCUSSION

Louisiana Civil Code Article 1983 states that an insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship. Louisiana Civil Code Articles 2045-2057 govern the construction and interpretation of contracts of insurance. *Citgo Petroleum Corporation v. Yeargin, Inc.,* 95-1574 (La.App. 3 Cir. 2/19/97); 690 So.2d 154.

Louisiana Civil Code Article 2045 defines interpretation of a contract as "the determination of the common intent of the parties." The intent is to be determined in accordance with the words and phrases used in a policy, and these words and phrases are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La.Civ.Code art. 2047.

4

One portion of the policy should not be construed separately at the expense of disregarding other provisions. La.Civ.Code art. 2050; *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So.2d 981 (La.1991).

"Exclusionary clauses are strictly construed against the insurer, and any ambiguity is resolved in favor of the insured. Of the permissible constructions, the court will adopt that which effectuates the insurance over that which defeats it." *Veillon v. U.S. Fire Ins. Co.*, 590 So. 2d 1368, 1372 (La.App. 3 Cir. 1991).

"If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied." *Holland v. Golden Rule Ins. Co.*, 96-264, pp. 4-5 (La.App. 3 Cir. 10/9/96), 688 So.2d 1186, 1189. Any ambiguity in an insurance policy's exclusions is construed to afford coverage. *La. Maint. Servs. Inc. v. Certain Underwriters at Lloyd's of London,* 616 So.2d 1250 (La.1993).

The determination of whether a contract is clear or ambiguous is a question of law. *Cadwallader v. Allstate Ins. Co.,* 02-1637, p. 4 (La. 6/27/03), 848 So.2d 577, 580. Where an ambiguity remains even after methods of contractual interpretation are employed, "the ambiguous provision is to be construed against the drafter and in favor of the insured." *Reynolds v. Select Properties, Ltd.,* 93-1480 (La. 4/11/94); 634 So.2d 1180, 1183; *McKinley v. Scott*, 98-263, p. 4 (La.App. 3 Cir. 10/28/98), 721 So.2d 1018, 1020, *writ denied*, 99-0117 (La. 3/12/99), 739 So.2d 207.

*Intent of the Parties: Professional Liability Coverage versus General Liability Coverage*

Defendant contends that the Policy does not offer general liability coverage, only coverage for professional liability, and further, that the contracting parties' intent weighs against general coverage for Plaintiffs' claims.

Plaintiffs contend that the Policy's ambiguous terms and definitions allow the court to interpret the Policy in favor of general liability coverage for Plaintiffs' claims. Plaintiffs further contend that the exclusion from Workers' Compensation coverage and claims for deputy sheriffs is a considerable factor to be considered when determining the parties' intent and purpose for purchasing a liability insurance policy with Defendant.

The main issue when reading the Policy is in the conflicting coverage terms and their generally prevailing meaning.

The Policy states it provides coverage for negligence, or rather "neglect" of the Named Insured. This type of coverage is not limited in the Policy with the professional liability language used by Defendant in its brief, namely the very limited, specific language of the Louisiana Civil Law Treatise, which states that professional liability is "professional skill and inherent risk" of a profession. William Shelby McKenzie & H. Alston Johnson, III, *Insurance Law & Practices*, *in* 15 *Louisiana Civil Law Treatise* § 6:24, 220 (4th ed. 2015). This language is not included in the Policy, rather, only the mere use of the word "Professional" in its title, "Police '*Professional*' Liability Claims Made Policy."

The Policy repeats the coverage for claims for breach of duty and neglect. This seems to be in contrast to what Defendant contends. The Policy, as written, can be interpreted in favor of coverage for the deputy sheriff. Despite attempting to limit the coverage to "professional skills or inherent risks" of a Sheriff's

Department, the Policy broadly states coverage for a Law Enforcement Wrongful Act which is, in pertinent part:

> [A]ny actual or alleged act, error, or omission, neglect or breach of duty by an Insured:
>
> > (1) which arises out of and is committed during the course and scope of Law Enforcement Activities, or
> >
> > (2) which arises out of the ownership, maintenance and use of Premises by the Insured for the purpose of conducting Law Enforcement Activities.

The trial court found that this broad coverage applied in both instances to the case at hand. Had the Defendant wanted to limit their coverage, they could have been more specific and restrictive in the definitions. We find that the trial court did not err in their reading of the Policy allowing for coverage of Plaintiffs' claims.

*Claims of an Insured Against Another Insured*

Defendant also contends that the Policy's exclusion for claims by an "insured" against another "insured" bars coverage for Plaintiffs' claims. Defendant claims that a sheriff's deputy under the Policy is an employee and, thus, an "Insured."

Plaintiffs contend that a sheriff's deputy is considered a "public official and officer of political subdivision," not an employee.

The Policy details its exclusions with the following definitions. The Policy states, in pertinent part:

> B. The Insurer shall not pay any Loss or Defense Expenses from any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:
> . . . .
> > (7) Personal Injury or Bodily Injury to:
> >
> > > (a) an employee of the Insured arising out of and in the course of employment by the Insured;

7

(b) an auxiliary officer or volunteer law enforcement officer, or reserve officer, while serving under the direction and control of the Insured; or

(c) the spouse, child, parent, brother, sister of that employee, or auxiliary or volunteer law enforcement officer, or reserve officer, as a consequence of (a) or (b) above.

The Policy defines "Bodily Injury" as:

[w]hen alleged against an Insured by an entity or a person who is not an Insured: physical injury, mental anguish, emotional distress, sickness or disease sustained by a person, including death resulting from any of these at any time.

The Policy attempts to limit claims brought by an "insured" against the named insured, the Sheriff's Department. Confusion arises when reading the definition of an "insured." It defines an insured under Section IV, in pertinent part:

Each of the following is an Insured under the Policy:

A. The Named Insured [The Sheriff's Department];

B. past, present, or future, full or part-time employees of the Named Insured;

C. past present or future, lawfully elected, appointed or employed officials of the Named Insured, with respect to liability arising out of Law Enforcement Activities;

D. past, present or future auxiliary and volunteer law enforcement officer, and reserves, who serve under the direction and control of the Named Insured, with respect to liability arising out of Law Enforcement Activities[.]

The Policy excludes payment for claims of personal or bodily injury of an "employee" of the insured, or an "auxiliary officer, volunteer or reserve officer, and the officer's spouse." The Policy does not state a limitation imposed specifically on a "deputy sheriff."

8

The trial court found that deputy sheriffs were not employees, and this distinction allowed for coverage under the Policy.

The trial court stated:

> [T]he insurer, you [Allied World], bears the burden of proving the application of the exclusionary clause. [*Veillon*] says [an] exclusionary clause is strictly construed against an insurer and any ambiguity resolved in favor of the insured. It instructs me that the courts will adopt those permissible constructions that effectuate the insurance over that which defeats it. Deputy Sheriff was not an employee of the Sheriff's office for purpose of exclusion and business automobile policy denying liability for injuries to employees and insured. If a deputy is not the employee of a Sheriff's office then he is not an insured under your policy so that exclusion would not apply.

We find that the trial court did not err in following *Veillon v. U.S. Fire Ins. Co.*, 590 So.2d 1368, 1372 (La.App. 3 Cir. 1991) and *Johnson v. Northern Assurance Co. of America*, 193 So.2d 920 (La.App. 3 Cir. 1967). In both cases, deputy sheriffs were not considered to be employees for recovery purposes and were allowed to recover against the Sheriff's Department and its Insurer because of the lack of recovery which could otherwise be available under Workers' Compensation.

In support of their argument, Defendant cites the rationale in *Lemelle v. Town of Sunset*, 01-351 (La.App. 3 Cir. 10/3/01), 796 So.2d 876. *Lemelle* is easily distinguished as the policy in that case contained the following clear and unambiguous language:

> This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" **arising out of any act or omission resulting from law enforcement activities of your police department or any of your law enforcement agencies, including their agents or "employees."** *Id.* **at 878**

9

The case before us contains no such language. Indeed, the clear and definitive language used in *Lemelle* stands in dramatic contrast to the language used in the Policy before us. Accordingly, this argument is without merit.

*Law Enforcement Wrongful Acts Arising Out of and Committed During the Course and Scope of Law Enforcement Activities*

Defendant further contends that the Plaintiffs' claims do not relate to a covered "Law Enforcement Wrongful Act" that arises out of or was committed during the course and scope of "Law Enforcement Activities" as defined by the Policy.

Plaintiffs contend that the language used to define which actions are "Law Enforcement Activities" and "Law Enforcement Wrongful Acts" are overly broad. Plaintiffs argue that this language should be interpreted utilizing its "general, ordinarily accepted meaning" which would not produce "an absurd result or conclusion" and in favor of coverage for their claims.

The Policy provides coverage for "Law Enforcement Wrongful Acts," and reads in pertinent part:

> The Insurer will pay on behalf of any Insured, excess of the Retention and subject to the Limits of Liability set forth in the Declarations, Loss which the Insured is legally obligated to pay as a result of any Claim first made against an Insured during the Policy Period or any applicable Extended Reporting Period, for a Law Enforcement Wrongful Act which occurs on or after the Retroactive Date and before the end of the Policy Period.

The Policy defines a "Law Enforcement Wrongful Act" as the following:

> [A]n act, error, or omission, neglect or breach of duty by an Insured:
>
> (1) which arises out of and is committed during the course and scope of Law Enforcement Activities, or

10

(2) which arises out of the ownership, maintenance and use of the Premises by the Insured for the purpose of conducting Law Enforcement Activities.

The Policy then defines "Law Enforcement Activities" as:

(1) law enforcement-related duties conducted by any Insured for or on behalf of the Named Insured;

(2) Off-Duty Activities;

(3) law enforcement assistance rendered by any Insured pursuant to an Insured Contract; or

(4) any special event or activity conducted by any Insured for or on behalf of the Named Insured; provided that there is no increase in staffing for the Named Insured due to such special event or activity.

We find that the trial court did not err in its reading of the above definitions, and that the trial court did not err in finding that the definitions are applicable to the Plaintiffs' claim for "neglect or breach of duty" as defined by the Policy.

### Covered Location or Premise Owned, Maintained, and Used by Named Insured

Defendant next contends that Plaintiffs' claims do not arise out of the ownership, maintenance and use of the automobile shop premises because Plaintiff was not injured at a covered location.

Plaintiff contends that the automobile shop clearly qualifies as a covered premise due to its use as a detention or lock-up facility which was leased and under the control of the Sheriff's Department.

The Policy defines "Premises" as the following:

(1) the location designated in Item 1 of the Declarations, including the ways and means adjoining such premises on land;

(2) any jail, holding cell, detention or lock-up facility, owned or leased by, and operated by, the Named Insured at the location designated in Item 1. of the Declarations; and

11

> (3) any other location specifically scheduled in an Endorsement to this Policy.

Item 1 of the Declarations in the Policy lists 200 Court Street, Ville Platte, Louisiana, the main office and headquarters of the Sheriff's Department. The Policy also includes an Endorsement for 415 West Cotton, Ville Platte, Louisiana, as a policy-covered "premises." The automobile repair shop is located at 412 South Soileau Street, Ville Platte, Louisiana.

Defendant contends that the automobile repair shop is specifically excluded and must have been clearly stated to be included in the Policy's coverage. Defendant argues that the Policy provides an exception to exclusion for only the location and facilities of the Sheriff's Department in Item 1 and the listed Endorsement for 415 West Cotton, Ville Platte, Louisiana.

Plaintiffs contend that the policy can be read to include the automobile repair shop for coverage, and further, that the particular statement in the Policy concerning "any jail, holding cell, detention or lock-up facility, owned or leased by, and operated by, the Named Insured" would allow for coverage under the Policy. Plaintiffs explain that this alternative provision covers the automobile repair shop as a facility which detained trustee inmates under the control of the Sheriff's Department.

The reference to the location designated in Item 1 simply identifies the office of the Sheriff's Department which is the primarily insured entity which operates at various locations.

The trial court agreed with Plaintiffs that the policy could be read either way, thus allowing coverage for the automobile shop.

We agree with the trial court that the Policy is capable of either interpretation, and thus, we cannot say that the trial court erred in failing to grant summary judgment on this issue.

*Ambiguity*

Defendant contends that the definitions contained within the Policy are clear and not ambiguous. Defendant argues that Plaintiffs' claims neither qualify for coverage as an act arising out of "law enforcement activities" nor under a covered "premise" as described in the Policy.

Plaintiffs contend that the definitions in the Policy are overly broad and lend little guidance to their intended meanings. Plaintiffs offer several reasonable and alternative readings of definitions in the Policy which would allow for recovery despite Defendant's contrary assertions.

The Policy has unclear definitions and exclusions which can be read in several different ways. This creates an inherent ambiguity in the Policy, and the trial court found it should be read in favor of the Plaintiffs.

We find the trial court did not err in finding that ambiguity exists as to the language used within Allied World's Policy, and accordingly, did not err in failing to grant summary judgment on this issue.

DISPOSITION

Defendant, Allied World Insurance Company, alleges that the trial court erred in granting Plaintiffs Jackie and Kay Doucet's coverage for their injuries and claims under the Police Professional Liability Policy. We find that the trial court was not wrong in finding ambiguity in the Police Professional Liability Policy's definitions and exclusions. Therefore, we affirm the trial court's ruling which

denied the motion for summary judgement.  All costs of this appeal are assessed to

Defendant, Allied World Insurance Company.

**AFFIRMED.**


This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.

NUMBER 16-131

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JACKIE DOUCET, ET AL.

VERSUS

DARWIN SELECT INSURANCE COMPANY, ET AL.

AMY, J., concurs in the result.

Finding the subject policy ambiguous, I join in the lead opinion's affirmation of the trial court's denial of the motion for summary judgment.