688 So.2d 1186 (1996)
Lee M. HOLLAND, Jr., Plaintiff-Appellee,
v.
GOLDEN RULE INSURANCE COMPANY, Defendant-Appellant.
No. 96-264.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
*1187 James Anthony Blanco, Lake Charles, for Plaintiff-Appellee.
Earl Norman Vaughan, Metairie, for Defendant-Appellant.
Before KNOLL, WOODARD and DECUIR, JJ.
WOODARD, Judge.
The trial court found in favor of the plaintiff, Lee Holland, Jr., in an action on an insurance policy executed between Holland and the defendant, Golden Rule Insurance Company. Golden Rule appeals. We affirm.

FACTS
Defendant-appellant, Golden Rule Insurance Company, issued a health insurance policy, effective January, 1994, to Lee and Eileen Holland. Their minor son, plaintiff-appellee Lee Holland, Jr., was an omnibus insured. In mid-August, 1994, Lee Holland, Jr. was involved in an accident and sustained injuries to his teeth. He was treated at the emergency room of St. Patrick's Hospital in Lake Charles, Louisiana. Follow-up treatment was required which Dr. Terrell Murphy, an endodontist, provided at his outpatient facility. Holland timely submitted his claims for these dental expenses to Golden Rule, who refused to pay for them based on exclusions in the policy. Golden Rule further stated that any future medical expenses from Dr. Murphy were excluded from payment on the same basis.
Holland filed suit in Lake Charles City Court, Calcasieu Parish, for payment of the dental treatments as well as for payment of associated future expenses. In August, 1995, a bench trial was held, and the judge rendered his opinion in October. He found in favor of Holland and ruled that 80% of Dr. Murphy's bill, $1,067.20, was owed under the terms of the policy. The judge further ordered, pursuant to La.R.S. 22:657, that Golden Rule pay a penalty of $1,067.20 for failing to pay Holland and $1,000.00 to Holland for attorney's fees. The executed judgment awarded Holland $1,067.20 for the portion of the bill he owed Dr. Murphy as well as $2,067.20, which we assume constitutes penalties plus attorney's fees.

ASSIGNMENTS OF ERROR
1. The trial court erred in its holding that the provisions of the policy, read as a whole, do not exclude the dental expenses incurred by claimant Holland.
2. The trial court erred in its holding that Golden Rule Insurance Company was arbitrary and capricious in its refusal to pay for dental expenses, as a fair reading of the policy indicates that Golden Rule Insurance Company interpreted its policy as a reasonable and prudent businessman in declining coverage.
3. The trial court erred in that it awarded an illegal amount of penalties.

LAW

POLICY LIMITS
This case involves the interplay of various exclusions to, and definitions in, a health insurance policy executed between plaintiff-appellee, Holland, and defendant-appellant, Golden Rule Insurance Company. Holland contends that expenses from surgical dental procedures, performed by Dr. Murphy in his outpatient facility, are covered under the policy. Golden Rule contends that the treatments were excluded from coverage.
Where the meaning of a contract is to be determined solely from the words upon its face without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court's findings. *1188 Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991).
Hebert v. Hartford Ins. Co. of the Midwest, 94-316, (La.App. 3 Cir. 11/2/94); 649 So.2d 631, 636. One of the headings in Section 6 of the policy is "Outpatient Surgical Expense Benefits." The second paragraph under this subsection states:
COVERED EXPENSES: For purposes of these benefits, the term "covered expenses " means expenses actually incurred by a covered person for those surgical services listed below which are: (A) administered or ordered by a doctor; (B) medically necessary to the diagnosis or treatment of an injury or illness; and (C) not excluded anywhere in the policy.
"Outpatient surgical facility" is defined underneath the paragraph on covered expenses.
"Outpatient surgical facility" means any establishment which operates pursuant to law with:
(A) an organized medical staff of doctors;

(B) permanent facilities that are equipped and operated primarily for the purpose of performing surgical procedures;
(C) continuous doctor services and the services of a registered nurse whenever a nurse is in the facility; and
(D) no accommodations for patients to stay overnight.
* * * * * *
No benefits are payable under these Outpatient Surgical Expense Benefits for charges:
(E) which are excluded in Section 7 of the policy.

Pertinent exclusions listed in Section 7 of the policy state that no benefits would be paid:

GENERAL EXCLUSIONS AND LIMITATIONS
* * * * * *
(J) for dental expenses, unless a covered person sustains an injury which results in: (1) damage to his or her natural teeth; and (2) expenses which are incurred within six months of the accident or as part if a treatment plan which was prescribed by a doctor and was begun within six months of the accident.
* * * * * *
(O) for any outpatient, office or home medical services or supplies, unless expressly provided for by the policy.
Both parties agree that the dental expenses were for treatment for damage to Holland's teeth and were incurred within six months of the accident. Thus, the exception to exclusion (J) applies. The parties further agree that Dr. Murphy's office/facility, which is where the expenses were incurred, is an outpatient facility. Exclusion (O) likewise applies. The issue is whether the phrase, "... unless expressly provided for by this policy," in exclusion (O) includes the exception to exclusion (J) for dental expenses.
The trial judge held, in pertinent part, that exclusion (O) should not override exclusion (J) and found Golden Rule liable under the policy for past expenses incurred by Holland in receiving dental surgery from Dr. Murphy. The trial judge cited one case in his opinion, Gunn v. Automotive Cas. Ins. Co., 614 So.2d 154 (La.App. 3 Cir.1993). The Gunn court stated:
The law applicable to the interpretation of insurance contracts is well settled. The judicial responsibility is to determine the common intent of the parties. In the absence of a conflict with statutes or public policy, insurers have the same rights as do individuals to limit their liability and to enforce whatever conditions they please upon their obligations. Hearty v. Harris, 574 So.2d 1234 (La.1991); May Company, Inc. v. Riverside Life Insurance Company, 546 So.2d 328 (La.App. 3rd Cir.1989). "Such limitations or exclusions ... must be free of ambiguity and sufficiently understandable to any given insured that it may be said that, in entering into the agreement containing such limitation, he understood and consented to such limitation." Percy v. Safeguard Insurance Company, 460 So.2d 724, 727 (La.App. 3rd Cir.1984), writ granted, 463 So.2d 596 (La.1985), cause dismissed, 464 So.2d 1366 (La.1985). Exclusionary provisions in insurance contracts *1189 are construed against the insurer, and any ambiguity is construed in favor of the insured. If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991). However, a clear and unambiguous provision in the insurance contract limiting liability must be given effect. Foret v. Louisiana Farm Bureau Casualty Insurance Company, 582 So.2d 989 (La.App. 1st Cir.1991); May Company, Inc., supra.
Id. at 157.
Neither party contends that the restrictions are against public policy; instead, they differ on the issue of ambiguity. If the words of an insurance policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent, and the agreement must be enforced as written. See La. Civ.Code art. 2046. Golden Rule contends that the language of the policy is unambiguous and clear. We find otherwise.The varying exclusions produce ambiguity concerning the intent of the parties in entering the contract and the conclusions to be drawn.
Ambiguity arises because of the phrase in exclusion (O), "... unless expressly provided for by the policy." There are two arguments that can be made about the phrase's application: (1) the exception to exclusion (J) could be considered an "express provision" for payment and thus not excludable under (O); (2) the exception to exclusion (J) is not an "express provision" for payment and thus excludable under (O). In that case, the policy would provide for dental treatment as long as it was performed in a hospital.
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La.Civ.Code art. 2053. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. See La.Civ.Code art. 2050.
Taking the policy as a whole, we find the interplay of the exclusions to be ambiguous, and we thus construe the policy in favor of the insured. Because the language of the exclusion is subject to two reasonable interpretations, we must apply the interpretation favoring coverage. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La. 1991). The trial judge properly found defendant-appellant, Golden Rule, responsible for the past medical expenses incurred by Holland through dental surgery performed by Dr. Murphy.
PENALTIES AND ATTORNEY'S FEES
Golden Rule contends that Holland should not have been awarded penalties because Golden Rule was not arbitrary and capricious in denying benefits to Holland. The penalties and attorney's fees awarded Holland by Judge Hood were based on La.R.S. 22:657 which provides that whenever a claim is properly presented under a health and accident policy, it must be paid within 30 days, unless just and reasonable grounds exist, such as would put a reasonable and prudent businessman on his guard that the claim is unjust. Cheramie v. Board of Trustees, 482 So.2d 742 (La.App. 1 Cir.1985), writ denied, 486 So.2d 734 (La.1986). "Whether or not an insurer's reasons for refusal are just and reasonable grounds is a question of fact to be determined from the individual facts and circumstances of each case." (Citations omitted). Thompson v. Business Insurance Life of America, 413 So.2d 331, 337 (La.App. 3 Cir.1982). Insurance companies, as is everyone, are bound to know the law which provides that "Any exclusion from coverage in an insurance policy must be clear and unmistakable. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted." Hoffpauir v. Time Ins. Co., 536 So.2d 699, 702 (La.App. 3 Cir.1988).
An insurer takes the risk of misinterpreting its own policy provisions. Such error will not be considered reasonable grounds for delaying the payment of benefits. Even when the issues involved are res nova, an insurer may be cast for penalties. Coker v. American Health and Life Insurance Company, 525 So.2d 130 (La.App. 3 Cir.1988). The issue of whether just and reasonable grounds exist is a question of fact. The trial court's factual determination will *1190 not be disturbed on appeal unless clearly wrong. Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3 Cir.1980).
A reasonable interpretation of coverage existed and Golden Rule should have noted the ambiguity of its provision. It is well-settled law in Louisiana that an ambiguous clause in an insurance contract will be construed in favor of the insured. Holland's mother testified that she spoke to Golden Rule no less than five times requesting payment for the medical expenses. Golden Rule refused to acknowledge the ambiguity and took the risk of misinterpreting its policy. Based on the individual facts and circumstances of this case, we do not find that the judgment of the trial court awarding penalties and attorney's fees was clearly wrong.
In his answer to this appeal, Holland requests attorney's fees in connection with this appeal in the amount of $3,000.00. Attorney's fees are hereby awarded to plaintiff in the amount of $1,500.00. Costs of appeal are assessed to defendant-appellant.

CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed at appellant's cost; appellee is awarded $1,500.00 in attorney's fees for the appeal.
AFFIRMED AND RENDERED.
DECUIR, J., dissents.